IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SKILLMASTER STAFFING SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-04-3619 |
| J.M. CLIPPER CORP., | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Plaintiff, SkillMaster Staffing Services, Inc. ("SkillMaster"), a staffing company, hired Ernest Morales and assigned him to work at Acadia Elastomers Corporation's J.M. Clipper plant in Deer Park, Texas.  Morales was injured while working as a machine operator at the plant.  SkillMaster paid Morales workers' compensation benefits and sued Acadia, seeking to recover the benefits paid to Morales and other damages.  On April 28, 2006, this court granted summary judgment for Acadia as to SkillMaster's negligence claims and held that, as a matter of law, Morales was an employee of both Acadia and SkillMaster for the purpose of the Texas Workers' Compensation Act.  (Docket Entry No. 28 at 17, 21). Acadia filed a motion asking this court to clarify whether SkillMaster is precluded from claiming reimbursement of the workers' compensation benefits it paid Morales.  (Docket Entry No. 29).  Acadia also moved for summary judgment as to SkillMaster's remaining claims for breach of contract, negligent misrepresentation, fraud, and unjust enrichment.

(*Id.*).  SkillMaster has responded.  (Docket Entry No. 31).  Acadia has replied and objected to SkillMaster's summary judgment evidence.  (Docket Entry No. 33).  SkillMaster has surreplied.  (Docket Entry No. 35).

Based on the motion, response, reply, and surreply; the parties' submissions; and the applicable law, this court clarifies that SkillMaster is precluded from pursuing recovery of the workers' compensation benefits it paid to Morales, denies Acadia's objections to SkillMaster's evidence, and denies Acadia's motion for summary judgment as to SkillMaster's remaining claims.  The reasons for these decisions are explained below.

## I.    Background

SkillMaster hired Morales in October 2003 and assigned him to work at Acadia's J.M. Clipper plant in Deer Park, Texas.  (Docket Entry No. 18, Ex. 3 at 1).  Acadia placed Morales in the plant's TDI shop to operate a gasket press.  (Docket Entry No. 18, Ex. 4 at 2).  On November 19, 2003, while Morales was operating the gasket press, his left arm was caught in the machine and crushed.  (Docket Entry No. 1, Original Pet.).  The injury resulted in the amputation of his arm below the elbow.

SkillMaster maintains workers' compensation insurance but is self-insured up to $500,000.  In this suit, SkillMaster alleged that Acadia hired Morales as a "general laborer" but used him as a gasket press operator, which requires a worker qualified as a machine operator and pays on a higher scale than a general laborer.  SkillMaster sued Acadia to recover the money it paid Morales in workers' compensation benefits after his injury. SkillMaster also alleged a right to recover damages for providing a general laborer to fill a

2

skilled worker's position.  (*Id*.).

On April 28, 2006, this court granted Acadia's summary judgment motion as to SkillMaster's negligence claims, holding that Morales was a dual employee of both Acadia and SkillMaster.  (Docket Entry No. 28 at 17).  This court also granted summary judgment for Acadia in a related case, *Morales v. Acadia Elastomers Corp.*, No. 04-3401, on July 15, 2005, holding that Morales's claims against Acadia were barred by the exclusive-remedy provisions of the Texas workers' compensation statute.

## II.   SkillMaster's Claim for Reimbursement of Workers' Compensation Benefits Paid to Morales

SkillMaster alleged causes of action against Acadia for breach of contract, fraudulent and negligent misrepresentation, unjust enrichment, negligence, and malice.  (Docket Entry No. 1, Original Pet.).  This court granted Acadia's summary judgment motion as to SkillMaster's negligence claim, holding that an employer who pays an employee workers' compensation benefits is entitled to recover from a third-party tortfeasor, but the cause of action against the tortfeasor belongs to the injured employee.  (Docket Entry No. 28 at 7 (citing *Houston Gen. Ins. Co. v. Campbell*, 964 S.W.2d 691, 695 (Tex. App.—Corpus Christi 1998, pet. denied))).  "[T]here is but one cause of action against the third party tortfeasor; that of the employee, who owns it burdened by the right of the insurance carrier to recoup itself for compensation paid."  *Houston Gen.*, 964 S.W.2d at 695; *see also U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 285 (5th Cir. 2001) ("[A] worker's compensation carrier . . . is entitled to recoupment of its claims [out of an employee's judgment against the

3

tortfeasor] first to the extent of all compensation paid out."). SkillMaster's claim to recover the benefits it paid Morales derives from Morales's claim against Acadia. *See Houston Gen.*, 964 S.W.2d at 695; *Phennel v. Roach*, 789 S.W.2d 612, 615 (Tex. App.—Dallas 1990, writ denied) (holding that, when plaintiff's pleadings were struck, resulting in a take-nothing judgment, the insurance carrier's cause of action was also defeated). This court also held that section 408.001 of the Texas Workers' Compensation Act barred Morales from recovering for his injuries from Acadia. (Docket Entry No. 28 at 7). SkillMaster cannot recover against Acadia for the workers' compensation benefits it paid Morales.

This court denied Acadia's first summary judgment motion as to SkillMaster's claims other than negligence. This court noted that Acadia had failed to address SkillMaster's argument that the claims for breach of contract and the related fraud claims would have existed even if Morales had not been injured. SkillMaster now contends that its other causes of action also seek to recover the workers' compensation payments that it made to Morales. (Docket Entry No. 31 at 8).

A workers' compensation carrier's subrogation right is statutory. There is no common-law right for a workers' compensation carrier to recover against a third-party tortfeasor. *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108 (Tex. 1985); *Erivas v. State Farm Mut. Auto. Ins. Co.*, 141 S.W.3d 671, 673–74 (Tex. App.—El Paso 2004, no pet.). Texas law provides for subrogation by insurers to "enforce the liability of the third party in the name of the injured employee." TEX. LAB. CODE § 417.001; *Gentry v. Flint*

4

*Eng'g & Constr. Co.*, 76 F.3d 95, 96 (5th Cir. 1996) (per curiam).  In *Gentry*, the court held that an employer is not a "third party" that may be sued under section 417.001.  *Gentry*, 76 F.3d at 96 & n.1.  Section 417.004 of the Texas Labor Code immunizes employers who subscribe to workers' compensation insurance from liability to third parties the employee might sue for his injuries.  *Whiteco Metrocom, Inc. v. Tex. Utils. Elec. Co.*, 30 S.W.3d 421, 423 (Tex. App.—Dallas 2000, pet. denied).

SkillMaster argues that the workers' compensation bar does not prohibit it from recovering for intentional torts.  (Docket Entry No. 31, ¶ 12).  "[A]n employee's claim for workers' compensation and his or her claim against the employer at common law for intentional tort are mutually exclusive."  *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996).  The intentional-tort exception to the workers' compensation bar is narrow.  Intentional torts directly attributable to an employer—as when a partner of a partnership/employer personally assaults an employee, or a corporate officer directs one employee to assault another—are removed from the Workers' Compensation Act bar.  *Id.* (citations omitted).  But the Act does not exempt intentional torts committed by fellow employees for whom the employer is only vicariously liable.  *Id.* at 601–02.  "An injury caused by willful negligence or willful gross negligence is not an intentional injury necessary to avoid the effect of the Workers' Compensation Act."  *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) (internal quotation marks omitted).

In the present case, SkillMaster does not allege or present evidence of an intentional tort against Morales that would avoid the workers' compensation bar.  (Docket Entry No. 1,

5

Original Pet.).  SkillMaster does allege intentional torts by Acadia against SkillMaster.  But section 417.001 allows a party to recover workers' compensation benefits that it has paid only through subrogation to an injured employee's cause of action.  TEX. LAB. CODE § 417.001; *Gentry*, 76 F.3d at 96.  SkillMaster has not alleged or presented evidence of intentional torts by Acadia against Morales that would allow SkillMaster to recover the workers' compensation benefits it paid Morales.

Because Acadia was Morales's "employer," SkillMaster is barred from seeking reimbursement for the workers' compensation payments it made as a result of Morales's injury.  SkillMaster's damages, if any, are limited to those that would have existed even if Morales had never been injured.[1]

---

[1] In SkillMaster's response to Acadia's first summary judgment motion, it alleged that Acadia was "unjustly enriched due to its misrepresentations to Plaintiff SkillMaster to the extent it was charged for a general laborer but used such general laborer to perform higher-priced machine operator functions." (Docket Entry No. 19, ¶ 13).  SkillMaster alleged that Acadia breached its contract because "[t]he difference in the rates charged for a general laborer by SkillMaster and the rates which would have been charged to [Acadia] for the services of a machine operator represents actual damages occasioned by Plaintiff unrelated to Mr. Morales' injury." (*Id.*, ¶ 12).

In SkillMaster's initial disclosures, it described its damages as follows:

SkillMaster Staffing Services will be seeking to recover all damages from Defendant, which were proximately caused by the November 20, 2003 accident at Defendant's plant.  These damages are the total amounts paid to claimant in the form of medical expenses, and other statutory workers compensation benefits below Plaintiff's $500,000.00 retention level.  These damages continue to accrue on a monthly basis. Currently the total amounts are listed at Bates-Stamps SMS00050–SMS00111. Documents are being produced herewith showing all payments to date.  In addition, Plaintiff seeks reimbursement of reasonable and necessary attorney's fees and costs in this case.  Further, Donald W. Gould of the law firm JOHNSON DELUCA KENNEDY AND KURISKY, P.C., is billing his shareholder's rates for work on this file at $225.00 per hour, associates rates at $165.00 per hour, and paralegal rates at $80.00 per hour. Billing statements with privileged communications redacted from them are available for inspection and copying at a mutually convenient time and place.

III.    **SkillMaster's Remaining Claims**

A.      **The Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir.

(Docket Entry No. 29, Ex. 3 at 5).  In SkillMaster's response to Acadia's second summary judgment motion, SkillMaster again claims that "[t]he difference in the rates charged for a general laborer by Plaintiff and the rates which would have been charged to [Acadia] for the services of a machine operator represents damages occasioned by Defendant's actions.  The fact that Mr. Morales was injured while Defendant had Mr. Morales performing unauthorized functions, for which Mr. Morales was not trained, only exacerbated Plaintiff's damages related to Defendant's breach of contract." (Docket Entry No. 31, ¶ 34).  SkillMaster makes a similar argument as to its unjust enrichment claim.  (*Id.*, ¶ 37).  To the extent that SkillMaster seeks reimbursement for the workers' compensation benefits it paid to Morales as "exacerbated damages," those damages are precluded. SkillMaster may seek damages for the difference between the cost of a skilled laborer and the cost of a general laborer.

7

2005).  "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  The nonmovant must do more than show that there is some metaphysical doubt as to the material facts.  *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

**B.     The Breach of Contract Claim**

8

The elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting damages to the plaintiff. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi 2001, no pet.); *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396–97 (Tex. App.—El Paso 1998, pet. denied); *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

SkillMaster argues that its contract with Acadia "expressly specified . . . the level of skill or diligence that is required to be performed by a temporary placement. The contract differentiated between a general laborer and a specialized laborer, including the difference in the payment scale for the different services." (Docket Entry No. 1, Original Pet., ¶ 20). SkillMaster contends that Acadia breached the contract by asking and paying for a general laborer but using the employee sent, Morales, as a "machine operator, a position that not only requires specific qualifications, but also demands a higher payment scale for the services rendered." (*Id.*).

Acadia contests the existence of a valid contract with SkillMaster. (Docket Entry No. 33 at 7). Acadia argues that SkillMaster has not produced a written contract and that any oral contract fails because it does not comply with the statute of frauds. (Docket Entry No. 29 at 14). SkillMaster responds that the time cards provided to Acadia with each temporary employee included the written contract terms. (Docket Entry No. 31 at 13).

Whether a contract is subject to the statute of frauds is a question of law. *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 432 (5th Cir. 2001). A promise that cannot be performed

within a year of its inception must satisfy the statute of frauds. *See* TEX. BUS. & COM. CODE § 26.01(b)(6). An indefinite-term contract does not fall within the statute of frauds because it may be performed within one year. *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 185–86 (5th Cir. 1995); *Goodyear Tire & Rubber Co. v. Portilla*, 836 S.W.2d 664 (Tex. App.—Corpus Christi 1992) (holding that employer's representation to plaintiff that she would not be fired except for unsatisfactory performance was outside the statute of frauds because it did not specify how long the employment term would last), *aff'd on other grounds*, 879 S.W.2d 47 (Tex. 1994); *Gerstacker v. Blum Consulting Eng'rs, Inc.*, 884 S.W.2d 845 (Tex. App—Dallas 1994, writ denied) (holding that statute of frauds did not apply to an employer's oral promise to employ plaintiff during his good and satisfactory performance because the employee could perform unsatisfactorily within one year). Acadia does not allege that SkillMaster agreed to supply it with temporary workers for more than one year. The time card that SkillMaster asserts as its contract with Acadia does not state a definite term. (Docket Entry No. 19, Ex. 3). The contract is for an indefinite term and falls outside the statute of frauds.

SkillMaster provided Acadia workers over an extended period. (Docket Entry No. 29 at 8–9). SkillMaster submitted a copy of a time card signed by Sharon Malone, the former Purchasing, Shipping, and Human Resources Manager for J.M. Clipper. (Docket Entry No. 18, Ex. 6; Docket Entry No. 19, Ex. 3). Acadia argues that it did not authorize those who signed the time cards to bind Acadia and that it was unaware of the fine print.

(Docket Entry No. 29 at 16).   The record presents a disputed fact issue as to whether Acadia's employees had actual or apparent authority to bind Acadia to the terms of the time cards.

Even if Acadia is not bound to the terms specified on the time cards, that does not preclude the existence of an oral contract with SkillMaster.  *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994) (citations omitted).  The record precludes summary judgment for Acadia as to the existence and enforceability of a contract with SkillMaster. *See id.*

Acadia also argues that even if a valid, enforceable contract exists, using Morales to operate the gasket machine was not a breach.  (Docket Entry No. 29 at 10–11).   Acadia argues that operating the gasket machine did not require special skills and that an employee working in the TDI shop was properly classified as a "general laborer."(*Id.*).   Mark Ryman, SkillMaster's Safety Director, testified in his affidavit that the agreement with Acadia provided different rates for different classifications of employees and that Acadia assigned Morales to a position classified for a machine operator.   (Docket Entry No. 31, Ex. C, ¶¶ 4–6).[2]   It is undisputed that SkillMaster charged Acadia the "general laborer" rate for

---

[2]Acadia objects to the affidavits of Jason Fulton, Erika Aleman, and Mark Ryman.   (Docket Entry No. 33 at 16–20).   Acadia argues that Fulton's affidavit is not based on personal knowledge, is conclusory, and contains legal conclusions.   (*Id.* at 16).   Fulton testified that he performed many functions at SkillMaster, and the content of the affidavit shows that he has personal knowledge of the subject matter of his testimony.   (*Id.*, Ex. A); *see United States v. Davis*, 792 F.2d 1299, 1304 (5th Cir. 1986). This court does not rely on any legal conclusions contained in Fulton's affidavit. Acadia argues that Aleman's affidavit conflicts with her earlier deposition testimony and contains legal conclusions.   (Docket Entry No. 33 at 18–19).   A court considering a summary judgment motion may disregard a nonmovant's affidavit that contradicts, without explanation, previous

Morales, not the higher "machine operator" rate.

Acadia argues that SkillMaster classified Morales using the code of 3126, which referred to someone who would use machinery. (Docket Entry No. 29 at 10). SkillMaster has provided evidence that the code number 3126 that appears on the data screen referred not to Morales's classification, but to the classification of his employer, Acadia, as performing tool manufacturing. (Docket Entry No. 31 at 17). SkillMaster submits the Texas Workers' Compensation and Employers' Liability Manual, which explains the classification system. The manual states that "[t]he object of the classification system is to group employers into classifications so that each classification reflects the exposure common to those employers. Subject to certain exceptions . . ., it is the business of the employer within Texas that is classified and not the separate occupations or duties of individual employees within the business." (Docket Entry No. 31, Ex. D-1 at R-6). There are disputed fact issues material to determining whether the position to which Acadia assigned Morales required someone classified and paid for as a machine operator, rather than a general laborer. These fact issues preclude summary judgment as to SkillMaster's breach of contract claim.

---

deposition testimony. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). Acadia points to two discrepancies: a different explanation of "winding" compared to the deposition and Aleman's deposition testimony that she did not know the rates of various workers. There is not such a direct conflict as to trigger the rule that a court will disregard the later affidavit. This court does not rely on legal conclusions contained in Aleman's affidavit. Acadia argues that Ryman's affidavit is conclusory and that he lacks personal knowledge. (Docket Entry No. 33 at 19–20). Ryman states in his affidavit that his knowledge was garnered from reviewing documents, and he provides an adequate description of facts. Acadia's objections to the three affidavits are denied.

C.     The Fraud Claim

SkillMaster argues that by requesting a general laborer to use as a machine operator, Acadia committed fraud.  (Docket Entry No. 1, Original Pet., ¶ 22).  SkillMaster argues that Acadia's misrepresentation of the nature of the work for which it sought a temporary employee induced SkillMaster to "place general labor employees, for temporary placement with Defendant, at a discounted rate of payment."  (*Id.*).

Under Texas law, fraud requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."  *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (internal quotation marks omitted).  A promise to do something in the future constitutes fraud only if the promise is made with no intention of performing it at the time it is made.  *See id.* at 48.  A "mere failure to perform a contract is not evidence of fraud."  *Id.*  A fraud claim requires evidence of the other party's intent when the representation was made.  *See id.*  The terms of a written contract cannot be displaced by prior negotiations.  *See Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 141–42 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

Acadia argues that SkillMaster knew that the "general laborers" supplied to Acadia were working on machines because Mark Ryman had visited the J.M. Clipper plant.  (Docket Entry No. 29 at 20).  Ryman testified in his affidavit that SkillMaster would not have knowingly provided an employee qualified only as a general laborer for a machine operator

13

position.  (Docket Entry No. 31, Ex. C, ¶ 7).  Jason Fulton, who has held multiple positions at SkillMaster and who was responsible for  safety and risk management for the Southeast Region, testified in his affidavit that Acadia requested a "general laborer" for its Clipper plant.  (Docket Entry No. 31, Ex. A, ¶¶ 6–8).  Fulton also testified that a general laborer was not to operate any tool-making machinery.  (*Id.*, ¶ 6).  The undisputed evidence shows that SkillMaster charged Acadia a "general laborer" rate for Morales.  This court finds disputed issues of fact material to whether Morales's job was properly classified as a general laborer, whether Acadia misrepresented that role, and whether SkillMaster relied on Acadia's representation of the type of worker it needed.  Summary judgment is denied as to the fraud claim.

### D.    The Negligent Misrepresentation Claim

SkillMaster argues that Acadia "failed to exercise reasonable care in obtaining and communicating information to Plaintiff" by placing an order for a general laborer but allowing employees sent to fill that order to work as machine operators.  (Docket Entry No. 1, Original Pet., ¶ 27).

Texas has adopted the *Restatement (Second) of Torts* with respect to negligent misrepresentation claims.  *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991).  To recover for negligent misrepresentation, a party must prove that: "(1) the representation [was] made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or

14

competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."  *Id.* at 442.  The *Restatement (Second) of Torts* § 552B requires the plaintiff to produce evidence of an "independent injury" beyond breach of contract.  *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (quoting and discussing RESTATEMENT (SECOND) OF TORTS § 552B (1997)).  "A common scenario for negligent misrepresentation occurs when a defendant states that a contract exists and the plaintiff relies on the statement, but it is later discovered that the contract was rejected or never completed."  *Agillion, Inc. v. Oliver*, 114 S.W.3d 86, 89 (Tex. App.—Austin 2003, no pet.) (citing *Abbott v. Pollock*, 946 S.W.2d 513, 518 (Tex. App.—Austin 1997, writ denied)).  "A claim for negligent misrepresentation is recognized in the place of a breach of contract claim and is not usually available when a contract was in force between the parties."  *Id.*

As previously discussed, summary judgment is denied as to SkillMaster's breach of contract claim because disputed issues of material fact exist as to whether the position to which Acadia assigned Morales required a machine operator, rather than a general laborer. These fact issues also preclude summary judgment as to SkillMaster's negligent misrepresentation claim.

### E.    The Unjust Enrichment Claim

SkillMaster argues that Acadia has been unjustly enriched by "misrepresenting the specific qualifications Plaintiff's employee needed to fill the requisite position" and that this misrepresentation allowed Acadia "to avoid having to pay a higher payment scale for the

15

services rendered by Mr. Morales."  (Docket Entry No. 1, Original Pet., ¶ 25).   Erica

Aleman, SkillMaster's Senior Staffing Manager, testified that a machine operator is billed

out at a rate of at least $21.00 per hour, while a general laborer is billed at $11.46 per hour.

(Docket Entry No. 31, Ex. B, ¶ 5).  A party may recover under an unjust enrichment theory

when a person has obtained a benefit from another by fraud, duress, or taking undue

advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

The summary judgment record reveals a disputed fact issue material to whether Acadia

intentionally asked for a general laborer but used him as a machine operator.   Summary

judgment is denied as to the unjust enrichment claim.

## IV.   Conclusion

Acadia's objections to the affidavits of Ryman, Aleman, and Fulton are denied.

Acadia's summary judgment motion as to SkillMaster's breach of contract, fraud, negligent

misrepresentation, and unjust enrichment claims is denied.   This court clarifies that

SkillMaster is barred from pursuing recovery against Acadia for the workers' compensation

benefits it paid to Morales.

No later than **September 1, 2006**, the parties are ordered to file with the court a

proposed schedule for resolving the remaining claims.

SIGNED on August 17, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

16